UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-129-TWP-TAB-02 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| NAHTAHNA GARCIA HERRERA | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:17-cr-00129-TWP-TAB-2 |
| NAHTAHNA GARCIA HERRERA, | ) ) ) |
| Defendant. | ) |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

This matter is before the Court on two *pro se* motions filed by Defendant Nahtanha[1] Garcia Herrera ("Ms. Herrera") that the Court construes as motions for compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). (Dkts. 148, 158.) Ms. Herrera seeks immediate release from incarceration because of risks and because she tested positive for the Coronavirus in July 2020. *Id.* Because Ms. Herrera has not shown extraordinary and compelling reasons for a sentence reduction, her Motions are **denied.**

### I.   BACKGROUND

In June 2018, Ms. Herrera pled guilty to two counts of sex trafficking of a minor, in violation of 18 U.S.C. §§ 159(a)(1), (b)(2), and (c). In particular, Ms. Herrera's case stemmed from a sex trafficking investigation involving Ms. Herrerra and her co-defendants who arranged for men to have sexual contact with minor victims. The Court sentenced Ms. Herrera to 240 months' imprisonment and 10 years of supervised release. (Dkts. 113, 116.) Judgment was entered on July 5, 2018. (Dkt. 116).

---

[1] The Court's records identify Ms. Herrera's first name as "Nahtahna," but she apparently spells her name "Nahtanha." Thus, the Court uses that spelling here.

On May 11, 2020, Ms. Herrera filed a *pro se* motion that the Court construed as a motion for compassionate release. (Dkt. 148.) The Court appointed counsel to represent Ms. Herrera. (Dkt. 149.) Counsel appeared on Ms. Herrera's behalf but later moved to withdraw. (Dkts. 150, 153.) The Court granted counsel's withdrawal on July 10, 2020. (Dkt. 154). After counsel withdrew, the Court informed Ms. Herrera that she must pursue her motion for compassionate release *pro se* or obtain private counsel. (Dkt. 155.) It also concluded that her *pro se* motion lacked sufficient information for the Court to conclude that she was entitled to compassionate release. *Id.* The Court ordered Ms. Herrera to supplement her motion by completing and returning the Court's form compassionate release motion. *Id.* On August 28, 2020, Ms. Herrera returned a completed form compassionate release motion. (Dkt. 158.) The Government responded on September 11, 2020. (Dkt. 159.) Ms. Herrera has not filed a reply, and the time for doing so has passed. (*See* Dkt. 155 at 2.) Thus, her motion is ripe for review.

## II.    DISCUSSION

Ms. Herrera is 36 years old. She is presently incarcerated at Federal Medical Center Carswell ("FMC Carswell") in Fort Worth, Texas. As of October 7, 2020, the Bureau of Prisons ("BOP") reports that FMC Carswell has 2 active COVID-19 cases among its inmates; it also reports that 6 inmates at FMC Carswell have died of COVID-19, and that 522 have recovered from the virus. https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020). According to the BOP website, Ms. Herrera's release date is July 10, 2034.

The Court understands Ms. Herrera to be arguing in her motion that she should be released from incarceration because she has medical conditions that put her at risk for experiencing severe COVID-19 symptoms and because she contracted COVID-19 while in custody at FMC Carswell.

3

(Dkt. 146 at 3; Dkt. 158 at 7)². She explains that she tested positive for COVID-19 between July 15 and 20, 2020. (Dkt. 158 at 2.) She states that she had a negative result when she was first tested but was still kept in the same unit with sick inmates. *Id.* at 5. When she was re-tested, she received a positive result. *Id.* As a result, she alleges that FMC Carswell was negligent and failed to take proper measures to ensure her safety. *Id.* She complains that FMC Carswell lacks sufficient medical staff to care for all positive cases at the facility. *Id.* She states that BOP protocols have not been followed and, as a result, the COVID-19 outbreak at FMC Carswell is out of control. *Id.* She states that she is in imminent danger. *Id.*

In response, the Government disputes Ms. Herrera's claim that she tested negative for COVID-19 and was left in the same unit with sick inmates. (Dkt. 159 at 8–9.) The Government has submitted records showing that Ms. Herrera's first test was ordered on July 3, 2020, and performed on July 7, 2020, but not reported until July 20, 2020. (Dkt. 159-2 at 2-3.) That test returned a positive result. *Id.* at 3. The Government has also submitted records showing that a second test was ordered on July 14, 2020, and performed on July 15, 2020. *Id.* at 4-5. That test was reported on July 19, 2020, and also returned a positive result. *Id.* at 5.

The Government does not dispute that Ms. Herrera has at least two conditions that put her at risk for developing severe symptoms from COVID-19 – diabetes and obesity. (Dkt. 159 at 10.) But it argues that Ms. Herrera has not shown an extraordinary and compelling reason warranting a sentence reduction because she has recovered from COVID-19. *Id.* The Government has submitted records showing that, as of August 3, 2020, BOP medical staff concluded that Ms. Herrera had recovered from the virus. (Dkt. 159-1.) The Government also argues that allegedly

---

² Citations to Dkt. 158 are to the page numbers electronically "stamped" on the document when it was filed in CM/ECF.

poor prison conditions are not an extraordinary and compelling reason warranting release. (Dkt. 159 at 14.) Finally, it argues that Ms. Herrera is a danger to the community, and that the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. *Id.* at 14–22.

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance

on the "extraordinary and compelling reasons" that may warrant a sentence reduction[3]. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Ms. Herrera is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of her sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application

---

[3] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).[4]

Ms. Herrera does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to her. (*See* Dkt. 158 at 2.) Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Court concludes that it does not. Ms. Herrera has conditions (obesity and diabetes) that could increase her risk for developing severe COVID-19 symptoms. *See* https:// www. cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 7, 2020) (stating that diabetes and obesity each increase the risk of severe illness from COVID-19). But Ms. Herrera contracted COVID-19 three months ago. The BOP's medical records show that Ms. Herrera recovered from the virus more than two months ago, and she does not claim to be suffering from any lasting effects from the virus—or even that she ever experienced any symptoms at all. Thus, she has not shown extraordinary and compelling reasons warranting a

---

[4] The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Ms. Herrera's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

sentence reduction. *See, e.g.*, *United States v. Weatherspoon*, No. 2:11-cr-9-JMS-CMM-07, Dkt. 894 (S.D. Ind. July 7, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had been hospitalized after testing positive for COVID-19, but had since recovered); *United States v. Wyatt*, No. 3:17-cr-11-RLY-MPB-02, Dkt. 165 (S.D. Ind. Sept. 3, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had tested positive for COVID-19 but remained asymptomatic).

Ms. Herrera's claim that the BOP left her housed with sick inmates after she tested negative is unsupported. To the contrary, the Government has filed unrebutted evidence showing that both of her COVID-19 tests were positive during the time when she was housed with other sick inmates. But, even if Ms. Herrera's claim is credited, the BOP's actions at most might support a civil suit in her district of incarceration. Ms. Herrera does not claim to have experienced any symptoms after contracting COVID-19 or to be suffering from any lingering effects. As a result, the BOP's alleged actions following her first test do not support releasing her from incarceration more than 13 years early.

Similarly, the Court understands that Ms. Herrera believes that officials at FMC Carswell have not handled the COVID-19 pandemic appropriately and that FMC Carswell lacks sufficient medical resources to handle the pandemic. Again, complaints about the BOP's handling of the pandemic could conceivably form the basis of a suit for civil relief. But they do not represent a reason to release Ms. Herrera from incarceration only three-and-a-half years into a 20-year sentence.

Given the Court's determination that Ms. Herrera has not shown extraordinary and compelling reasons to justify her release, whether she poses a danger to the community or whether the § 3553(a) factors weigh in favor of her release need not be discussed at length. Nonetheless, the Government makes strong—and unrebutted—arguments that Ms. Herrera is a danger to the community and that the sentencing factors in § 3553(a) weigh against release. (*See* Dkt. 159 at 14–22.) The Court recognizes that Ms. Herrera had a traumatic childhood. (*See* Dkt. 102 at 14 (Presentence Investigation Report).) However, in this case, Ms. Herrera sex trafficked two separate minors. *Id.* at 5–6; Dkt. 88 at 7–10 (stipulated factual basis for guilty plea in Petition to Enter Plea of Guilty and Plea Agreement). She did not play a small role in their victimization. She communicated with prospective purchasers of the minors' commercial sex acts, transported the minors so they could engage in commercial sex acts, and directed the minors to engage in commercial sex acts, and collected money from the purchasers. *Id.* She often stayed in the bathroom of the motel rooms while one of the minors engaged in commercial sex acts with adult men. (Dkt. 88 at 9.) These are heinous crimes.

Ms. Herrera has a significant history of mental health and substance abuse problems. (Dkt. 102 at 16–18.) The Government has filed treatment records suggesting—and the Court agrees, that Ms. Herrera can continue to benefit from the treatment resources available to her in the BOP. (Dkts. 159-7, 159-8.)

Finally, the advisory guideline range for her crimes was 360 months to life, (Dkt. 102 at 19), and she was ultimately sentenced substantially below the guideline to 240 months. She has only served about three-and-a-half years of that sentence. On this record, the Court cannot conclude that Ms. Herrera is no longer a danger to the community, and it cannot find that the §

3553(a) factors warrant releasing her more than 13 years early and before she has served even a quarter of her sentence.

### III.   CONCLUSION

For the reasons stated above, Ms. Herrera's Motions for compassionate release, (Dkt. [148], Dkt. [158]), are **DENIED**.

**SO ORDERED.**

Date:  10/13/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana


DISTRIBUTION:

Nahtanha Garcia Herrera, Reg. No. 15732-028
FMC Carswell
Federal Medical Center
P.O. Box 27137
Fort Worth, Texas  76127

Kristina M. Korobov
UNITED STATES ATTORNEY'S OFFICE
kristina.korobov@usdoj.gov